J-A18010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                                               :              PENNSYLVANIA
                                               :
                v.                       :
                                               :
JARED ADAM SCHAFKOPF          :
                                               :
               Appellant        :    No. 108 WDA 2021

Appeal from the Judgment of Sentence Entered October 9, 2020
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000559-2019

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:          **FILED: DECEMBER 17, 2021**

Appellant, Jared Adam Schafkopf, appeals from his judgment of sentence entered on October 9, 2020, as made final by the trial court's denial of his post-sentence motion.  We affirm.

The trial court summarized the facts of this case as follows:

The events leading to [Appellant's] conviction occurred on February 27, 2019, when the Indiana University of Pennsylvania (IUP) Police Department was contacted about a student who was [videotaping] his professor, Dr. Rachell Bouchat, at Stright Hall, a building on the IUP campus.  According to Dr. Bouchat, [Appellant] had contacted her via email in December 2018, asking to see his final exam.  Dr. Bouchat invited [Appellant] to stop at her on[-]campus office the following week or during office hours when the next semester started.  [Appellant] did not elect to visit Dr. Bouchat until February 27, 2019, and during their meeting, [Appellant] indicated his belief that he had been graded unfairly due to political differences between himself and Dr. Bouchat.  At some point during the meeting, [Appellant] informed Dr. Bouchat that he was recording her, to which she responded that she did not give him permission to do that and told him to leave her office.

Dr. Bouchat testified that she was so shaken by the confrontation that she had to cancel the next class she was scheduled to teach.

Prior to entering Stright Hall, [Appellant] began recording the video, indicating that he was going to confront Dr. Bouchat. According to [Appellant], the purpose for making the video was because he believed she had treated him poorly in class in the way she spoke to him and "targeted" him. [Appellant] admitted that once he informed Dr. Bouchat that he was recording her she told him he did not have permission, but he continued to record. Following the confrontation, [Appellant] proceeded to record a monologue about the situation. After the IUP Police were called, [Appellant] was told to leave the premises and the video was later seized pursuant to a warrant. Charges against [Appellant] were filed on May 6, 2019.

In July 2020, Dr. Bouchat became aware of an article in The College Fix that portrayed [Appellant] as a victim of persecution due to his political differences with her. As a result, Dr. Bouchat began receiving threatening messages via email and social media with more articles, posts, and videos to follow. Dr. Bouchat's home address was also shared, which led to harassment there, causing her to become fearful for her safety in her own home. According to Dr. Bouchat, [Appellant] continued to seek attention due to his case, and even after the trial, she suffers ongoing defamation and fears for her safety.

Trial Court Opinion, 12/21/20, at 1-3 (citation to transcript omitted).

Appellant proceeded in a non-jury trial on August 18, 2020 and was subsequently convicted of one count of unlawful interception of a communication,[1] graded as a felony of the third degree. *See* Trial Court Opinion, 12/21/20, at 1.

The trial court held a sentencing hearing on October 9, 2020. At sentencing, Dr. Bouchat provided a victim impact statement. After explaining

---

[1] 18 Pa.C.S.A. § 5703(1).

- 2 -

her feelings during the incident, she further explained the impact of Appellant's continued and connected actions. *See.* N.T. Sentencing Hearing, 10/9/20, at 3-7. She explained that an online news article in The College Fix painted Appellant as "the conservative victim of persecution by a liberal professor" which demonstrated that even without specifically posting the recording of Dr. Bouchat, Appellant "was seeking the spotlight to spread lies that were a threat to my professional and personal life as well as my safety." *Id.* at 4. Dr. Bouchat began receiving threats through social media and her university email. In the following weeks there were "more news articles, posts, tweets, TikTok videos, a GoFundMe page" and even national recognition through the Mark Levin Show from Fox News. *Id.* at 4-5. Appellant personally created a GoFundMe page, two TikTok videos, and requested to appear on The Mark Levin Show. *Id.* at 5. Dr. Bouchat stated she continues to be a target for news stories on conservative websites that tag her name "always in bold or red font often with the word convicted" as a result of the "lie that [Appellant] fabricated to elevate himself in conservative circles." *Id.* at 6. Dr. Bouchat testified that her wish was for "all of this to stop," and a no-contact provision where Appellant could not contact her or "continue to spread his false narrative" because "people such as [Appellant] wield the internet as a weapon to ruin the lives of individuals like me." *Id.* at 7.

After Dr. Bouchat provided her victim impact statement, the trial court explained its reasons for the sentence it imposed, including the conditions of

- 3 -

probation the court attached. The trial court reviewed Appellant's presentence investigation (PSI) report, the victim's statements and submissions, the facts of the case as proven at trial, the sentencing memorandum provided by defense counsel, and the sentencing guidelines which reflected Appellant's prior record score of zero and offense gravity score of five. N.T. Sentencing Hearing, 10/9/20, at 8. The trial court reasoned:

> I have determined that a sentence in the standard range is appropriate. It is clear that you have shown little or no remorse for your actions and you have continued to [bully] the victim in internet posts. Because of your actions[,] the victim is subject to abuse and bullying. Because of you, the victim has suffered extreme emotional distress[,] which has caused her to be fearful in her home. Most of the posts that you make are for your own benefit to attract attention to yourself. I am therefore as part of the order sentence, I am going to require that you not post or cause others to post any information or statements about the victim on the internet or any other social media platform. … In addition, in arriving at this sentence I have considered your age and your immaturity. And while you have no mental health diagnosis, your inability to show empathy for the victim and to take responsibility for your actions[,] I do feel that you do have some mental health issues that you need to address because you are making decisions that are causing people to suffer as in this case and also are jeopardizing your own freedom and your future.

*Id.* at 9-10. The trial court further explained:

> And you know, this is a difficult case. I have a victim here who has been extremely traumatized, who has had her life turned upside down by what you've done here. And standing in front of me is an intelligent young man with no prior criminal record and it is a difficult case for me. I considered putting you in jail … for [48] hours just so you could see how it is. And I have considered lengthy probation which I think is appropriate here because we are going to have to keep tabs on you to protect the victim here and protect society. And I am going to order that you not post anything about Dr. Bouchat at all, have any contact with her, to the extent you can remove what you posted[,] I want that done.

- 4 -

> And because if you do anything to harass or affect this lady going forward, I am going to put you in jail.

*Id.* at 12. The trial court reiterated the importance that Appellant cannot post anything about Dr. Bouchat or encourage others to do so. *Id.* at 13.

Thus, the trial court sentenced Appellant to, *inter alia*, a seven-year period of probation with special conditions. *See* Trial Court Order, 10/9/21. One of these special conditions prohibited Appellant from "post[ing] or caus[ing] to be posted any information or comments about the victim [Dr. Rachelle Bouchat] on the internet or any other social media site, and to the extent possible, he shall delete any existing posts." *Id.* The trial court held a hearing on Appellant's post-sentence motions on December 18, 2020, and thereafter denied the substance of such motions on December 21, 2020. *See* Trial Court Opinion, 12/21/20, at 1. This timely appeal followed.[2]

> Appellant raises the following issues:
>
> 1. Whether the evidence was insufficient as a matter of law to sustain a conviction for the unlawful interception of a communication under [18 Pa.C.S.A.] § 5703(1)?
>
> 2. Whether the verdict was against the weight of the evidence?
>
> 3. Whether the [trial c]ourt abused its discretion in imposing special conditions of probation that [Appellant] "shall not post or cause to be posted any information or comments about the victim on the internet or any other social media site, and to the extent possible, he shall delete any existing posts" as these conditions

---

[2] Appellant filed a notice of appeal on January 11, 2021. Thereafter, Appellant timely filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 17, 2021, the trial court issued its Rule 1925(a) opinion wherein it incorporated its December 21, 2020 opinion. *See* Trial Court Opinion, 2/17/21.

violated the Appellant's rights to free expression pursuant to the First and Fourteenth Amendment to the United States Constitution and Article 1, Section 7 of the Constitution of the Commonwealth, were not consistent with his rehabilitative needs[,] and otherwise exceeded the permissible conditions of probation?

Appellant's Brief at 7-8.

In Appellant's first issue, he raises a sufficiency of the evidence challenge, arguing that "[t]he evidence failed to show that what the Appellant recorded was an 'oral communication' as that term is defined by § 5702 of the Crimes Code[, 18 Pa.C.S.A. § 5702]." **Id.** at 19. "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013). Moreover:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying [this] test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Pappas***, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004); ***see also Commonwealth v. Brown***, 52 A.3d 1139, 1163 (Pa. 2012) (stating that, in reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier[-]of[-]fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original).

Appellant was convicted under the Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act"), 18 Pa.C.S.A. §§ 5701-5782. Under § 5703, "a person is guilty of a felony of the third degree if he intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication." 18 Pa.C.S.A. § 5703(1). The statute further defines an oral communication as: "any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S.A. § 5702. Our Supreme Court explained:

> [T]he proper inquiries are whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances. In determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy. To determine the existence of an

expectation of privacy in one's activities, a reviewing court must first examine whether the person exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable.

*Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998). We employ a totality of the circumstances approach when examining the legitimacy and reasonableness of a speaker's expectation of privacy. *Commonwealth v. Prisk*, 13 A.3d 526, 531 (Pa. Super. 2011), *quoting Commonwealth v. Moore*, 928 A.2d 1092, 1098 (Pa. Super. 2007).

Appellant specifically claims there was insufficient evidence to show the circumstances of his offense fell within the definition of "oral communication." He argues that a speaker voluntarily disclosing information has no presumptive expectation of privacy in locations other than in the speaker's home. Appellant's Brief at 27-28. Appellant bolsters this argument by noting that the subject matter and confrontational nature of this exchange disbands any notion of privacy. *Id.* at 29. Appellant further contends that Dr. Bouchat's expectation of privacy was not reasonable given that the recorded conversation happened in a business office with the door open, and that at some point Dr. Bouchat spoke in an elevated voice that was overheard by a student in the hallway. *Id.* at 31-34. In sum, Appellant claims that the trial court "fail[ed] to analyze any relevant factors critical to this analysis[.]" *Id.* at 38.

Conversely, the trial court explained "the subject matter discussed is not the focus of the [c]ourt's inquiry," but rather the issue is "whether under

the circumstances, Dr. Bouchat had a reasonable expectation of privacy in her office which was violated by [Appellant's] surreptitious recording." Trial Court Opinion, 12/21/20, at 5. The trial court noted that "[a]lthough presumably anyone could wander into Stright Hall during normal business hours, a professor's private office isn't publicly accessible in the same way the entrance to the building is." *Id.* The trial court rejected Appellant's arguments as misreading the relevant caselaw and misunderstanding the full circumstances of the case at hand. *See id.* at 6-7 ("Appellant misread caselaw on expectations of privacy in the workplace and examining open door[s] and raised voices in context with other [facts,] including the physical positions of the parties and limited portion of the exchange overheard").

For over 50 years, courts have recognized a reasonable expectation of privacy in one's office or workplace. *See Mancusi v. DeForte*, 392 U.S. 364, 469 (1968). This expectation, however, may be reduced by other factors elicited by evidence on a case-by-case basis. *See*, *e.g.*, *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (public employees have reasonable expectation of privacy in their workplace that may be reduced by actual office practices and procedures). In the context of a shared space, "[t]he crucial distinction between protected and unprotected areas, [ ] is whether an unrelated person has unfettered access to the area" and whether an individual "has the ability and right to exclude others from entrance[.]" *Commonwealth v. Reed*, 851 A.2d 958, 961-962 (Pa. Super. 2004); *accord Commonwealth v. Curtin*,

628 A.2d 1132, 1139 (Pa. Super. 1993) (unlike offices, a reception area is unprotected because it "is used for purposes of greeting and screening those who enter an office" and the "public and office workers are allowed to walk freely into a reception area").

Here, to determine whether there was an oral communication as defined under the Wiretap Act, we consider whether Dr. Bouchat harbored a subjective expectation of privacy and whether her expectation was one that society would recognize as objectively reasonable. **Agnew, supra**. It is uncontested that Dr. Bouchat had a subjective expectation of privacy. **See** Appellant's Brief at 36 and 38 (acknowledging Dr. Bouchat's subjective expectations). Rather, the focus of our analysis centers upon whether her expectation was objectively reasonable under the totality of the circumstances. **Prisk, supra**.

For purposes of our review, we briefly recount the relevant circumstances of the incident. Appellant emailed Dr. Bouchat to request a meeting for the sole purpose of discussing his final grade. N.T. Non-Jury Trial, 8/18/20, at 17, 55. Prior to the meeting, Appellant purposely declined to notify Dr. Bouchat that his true intent was to confront her about her perceived bias against him. **Id.** at 55.[3] Appellant began his video outside of Stright Hall by explaining what he planned to do and that he intentionally hid the camera

---

[3] Appellant testified, "[i]n the past I tried to talk to her [about the alleged discrimination,] and she just refused to talk to me. So, I did not [notify her] in the email prior to the meeting." **Id.** at 55.

- 10 -

in his backpack before he walked into Stright Hall. *See* Commonwealth Exhibit One (hereinafter "Videotape").

Dr. Bouchat was the sole occupant of her office and she possessed a key to lock it when she was not present. Appellant entered Dr. Bouchat's office and asked to see his final exam. *See* Commonwealth Exhibit One (hereinafter "Videotape"). At that time, the door to Dr. Bouchat's office remained open and Appellant positioned himself between her and the doorway. No others were present within the office. Individuals in the hallway outside Dr. Bouchat's office could not understand the conversation between Appellant and Dr. Bouchat when it commenced. Eventually, however, Appellant revealed his surreptitious recording and accused Dr. Bouchat of treating him unfairly because his political beliefs differed from hers. *Id.*; N.T. Non-Jury Trial, 8/18/20, at 19. When she learned that Appellant was recording the encounter, Dr. Bouchat raised her voice, expressed her non-consent to the videotape recording, and immediately asked Appellant to leave her office. Appellant, however, continued to record. *Id.* at 19, 59. No one outside Dr. Bouchat's office understood the parties' conversation until Dr. Bouchat raised her voice and asked Appellant to depart from her office. *See id.* at 36 (defense witness Eric Seidel testifying that the words he overheard were "get out; get out").

Based upon the aforementioned circumstances, we conclude that sufficient evidence allowed the trial court, as fact-finder, to find that Dr.

Bouchat possessed an objectively reasonable expectation of privacy and non-interception during a private office conversation with a student ostensibly intended to review the student's class performance and final grade. The evidence demonstrated that the exchange between the parties occurred within Dr. Bouchat's private office where she maintained the authority to exclude others.[4] The only individuals within the office during the communication were Appellant and Dr. Bouchat. *See* Trial Court Opinion, 12/21/20, at 6. Prior to entering the office, Appellant concealed his recording equipment to facilitate his plan to surreptitiously capture a recording of Dr. Bouchat "answer[ing] for something before he even entered the building to go to her office." N.T. Non-Jury Trial, 8/18/20, at 66 (trial court articulating its findings of fact). No one overheard the parties' in-office conversation until Appellant revealed his recording activities and caused Dr. Bouchat to elevate her voice when asking Appellant to leave. Thus, despite an open door and limited third-party disclosure, the facts depict a private office meeting between a teacher and a student to which a reasonable expectation of privacy would extend.

_____

[4] Appellant's own actions belie his arguments to the contrary. Appellant scheduled a meeting with Dr. Bouchat to ensure he could meet with her at the office. Moreover, Appellant temporarily complied when Dr. Bouchat's directed him to leave. *See* Videotape. Therefore, viewed in the light most favorable to the Commonwealth, Appellant's own actions demonstrate his belief that this was Dr. Bouchat's private office rather than a public office "in a public building" that is "open to the public at any time." *See* Appellant's Brief at 24.

Appellant cites the presence of third parties who overheard parts of his exchange with Dr. Bouchat and an open door to suggest that no reasonable expectation of privacy could exist in this case. This position is unavailing and runs counter to the applicable standard, which focuses on the totality of the circumstances. It is the circumstances that exist when an exchange commences which are most relevant to the objective expectations of privacy and non-interception. *See Commonwealth v. Parrella*, 610 A.2d 1006, 1011 (Pa. Super. 1992) (a speaker does not lose his or her reasonable expectation of privacy when the interception commenced prior to that speaker's actions). At the time of the interception, Appellant led Dr. Bouchat to believe he was in her private office to discuss his final grade, not to discuss her alleged bias against him. It was not until after the interception commenced that Appellant revealed the true purpose for his visit and the fact that he was capturing the encounter on videotape. These revelations caused Dr. Bouchat to raise her voice, which then allowed individuals in the hallway outside her office to hear parts of the ongoing exchange. Under these circumstances, the trial court rightfully emphasized the stated purpose for the parties' meeting, not the circumstances – previously unbeknownst to Dr. Bouchat - that emerged after the commencement of the recording, when measuring the objective reasonableness of Dr. Bouchat's expectation of privacy and non-interception.

Moreover, Appellant's emphasis on the open door of Dr. Bouchat's private office is unpersuasive. While important to consider in the totality of the circumstances, an isolated feature of a physical layout such as an open door is not, in and of itself, dispositive. **See Commonwealth v. Myers**, 676 A.2d 662 (Pa. Super. 1996) (reasonable expectation of privacy existed despite open door because communication was between childhood friends in remote area); **Commonwealth v. Henlen**, 564 A.2d 905 (Pa. 1989); **Commonwealth v. Dewar**, 674 A.2d 714, 718-719 (Pa. Super. 1996). Here, the totality of the circumstances demonstrated a private office setting to which a reasonable expectation of privacy extended, notwithstanding the presence of an open door. Hence, Appellant's sufficiency challenge merits no relief.

Appellant next claims that the verdict was against the weight of the evidence. In an argument identical to his sufficiency claim, Appellant contends that the trial court "gives little or no consideration to the objective factors which clearly undercut the notion that [Appellant] committed a felony by recording this confrontation." Appellant's Brief at 39. In Appellant's view, the trial court improperly "relies primarily on its sympathetic views of the subjective reaction of the professor, a matter irrelevant to the ultimate determination." **Id.** at 39-40.

Our standard of review of a weight of the evidence claim is well-settled.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an

- 14 -

appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (quotation, citation, and emphasis omitted). Moreover,

[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Morgan*, 913 A.2s 906, 909 (Pa. Super. 2006) (internal citations omitted). Stated otherwise, an appellant may prevail on a weight of the evidence claim only where "the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (quotation and citation omitted).

Based upon our review of the record and our analysis above pertaining to the sufficiency of the evidence, we find that Appellant's convictions do not shock one's sense of justice. *Bohlen, supra*. In denying Appellant's weight of the evidence claim, the trial court noted Appellant's concession that the facts and credibility determinations are not at issue, thus Appellant's weight argument "merely reframes his prior argument on the sufficiency of the evidence" which the court determined was meritless. Trial Court Opinion, 12/21/20, at 9-10. While Appellant argues that the isolated factors of an open

- 15 -

door and bystanders overhearing a limited and irrelevant portion of the conversation are of such greater significance as to outweigh all other circumstances and entitle him to a new trial, we find these two factors, amongst other circumstances of this case, are not of such an imperative nature in and of themselves as to require a new trial "so that right may be given another opportunity to prevail." **Morales, supra**. The trial court, sitting as fact-finder, was free to believe all, part, or none of the evidence. This Court may not step into the shoes of the trial judge to reweigh the evidence in a light more favorable to Appellant. **Commonwealth v. Clay**, 64 A.3d 1049, 1056 (Pa. 2013). As the trial court's well-reasoned determination enjoys record support, we conclude that it did not abuse its discretion.

In his final claim, Appellant takes issue with the trial court's decision to impose certain special conditions of probation which restricted his internet activities. Appellant's final claim, therefore, implicates the discretionary aspects of sentencing. **See Commonwealth v. Fenton**, 750 A.2d 863, 867 n.4 (Pa. Super. 2000) (a challenge to conditions of probation implicates the discretionary aspects of sentencing) (citation omitted).

When an appellant challenges the discretionary aspects of a sentence, the right to appeal is not absolute. **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011). Instead, the appellant must petition this Court for review. **See** 42 Pa.C.S.A. § 9781(b). An appellant challenging the

discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (internal case citations omitted).  An appellate court will not review the merits of an appeal unless the appellant meets all four criteria.  **Commonwealth v. Luketic**, 162 A.3d 1149, 1159-1160 (Pa. Super. 2017) ("Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim.").

Appellant filed a timely notice of appeal, properly preserved his claims, and filed an appropriate Rule 2119(f) statement in his brief.  Appellant argues within his Rule 2119(f) statement that this appeal presents a substantial question because the conditions of probation impermissibly burden his First Amendment free speech rights, lack reasonable relation to his rehabilitative needs, and are otherwise inappropriate pursuant to 42 Pa.C.S.A. §§ 9754 and 9763.  Appellant's Brief at 42-43.[5]  An argument that a condition of probation

---

[5] To the extent that Appellant raised the substantial question that the conditions of probation are not consistent with his unique rehabilitative needs, *(Footnote Continued Next Page)*

- 17 -

unduly restricts one's freedom of speech raises a substantial question. ***See***

***Commonwealth v. Starr***, 234 A.3d 755, 759-760 (Pa. Super. 2020);

***Fenton***, 750 A.2d at 867. Therefore, we shall proceed to the merits of his

discretionary sentencing challenge.

> We recently explained:
>
> As a general matter, the sentencing court is charged to impose a sentence that is "consistent" with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.[A.] § 9721(b). Our standard of review in this context is well-established:
>
> > Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Commonwealth v. Walls***, 926 A.2d 957 ([Pa.] 2007). In conducting our review, this Court must also "have regard" for: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation; (3) the findings upon which the sentence was based; and (4) the

he failed to develop this argument within his brief to this Court. Consequently, Appellant waived this issue. ***See Commonwealth v. Heggins***, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

Pennsylvania Sentencing Guidelines. 42 Pa.C.S.[A.] § 9781(d)(1)-(4).

With specific reference to probation conditions, the sentencing court is required to impose "reasonable conditions" that "it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S.[A.] § 9754(c). The scope and substance of probation conditions is governed by 42 Pa.C.S.[A.] § 9763(b), which provides a non-exhaustive list of potential conditions. Pursuant to a catchall provision in this statute, the sentencing court is generally empowered to impose probation conditions that require a defendant "to do things" that are "reasonably related to rehabilitation." 42 Pa.C.S.[A.] § 9763(b)(15). This Court has interpreted this statutory rubric as follows:

> A probation order is unique and individualized. It is constructed as an alternative to imprisonment and is designed to rehabilitate a criminal defendant while still preserving the rights of law-abiding citizens to be secure in their persons and property. When conditions are placed on probation orders they are formulated to insure or assist a defendant in leading a law-abiding life. Moreover, as long as conditions placed on probation are reasonable, it is within a trial court's discretion to order them.

*Commonwealth v. Hartman*, 908 A.2d 316, 320 (Pa. Super. 2006) (internal citations omitted). Thus, "[w]hile sentencing courts have discretion to impose conditions of probation, such conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of law-abiding conduct." *Commonwealth v. Hall*, 80 A.3d 1204, 1215 ([Pa.] 2013).

*Commonwealth v. Carr*, 2021 WL 3852320 at *5-*6 (Pa. Super. Aug. 30, 2021) (parallel citation omitted).

Appellant challenges his special conditions of probation as a violation of his free speech rights. Here, Appellant makes the blanket assertion that the conditions "compromise the core First Amendment freedoms [Appellant] enjoys" because they allegedly "extend to **all** speech." Appellant's Brief at

43-44 (emphasis in original).[6] Appellant concedes, however, that narrowly tailored restrictions on speech for the protection of victims can be constitutional, so long as they do not apply to all speech by the defendant. *Id.* at 46.

In this case, the trial court contemplated a sentence of incarceration. *See* N.T. Sentencing Hearing, 10/9/20, at 12.[7] Instead, it imposed a seven-year period of probation with special conditions including, *inter alia*, that Appellant "shall not post or cause to be posted any information or comments about the victim on the internet or any other social media site, and to the extent possible, he shall delete any existing posts." Trial Court Order,

_____

[6] Notably, all caselaw binding on this Court to which Appellant cites in support of his claim involve either broadly applicable statutes or civil injunctions. *See*, *e.g.*, *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) (striking down broad statute imposing automatic and complete restrictions on computer and internet access both during and after completion of sentence on entire class of people); *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) (vacating broad civil injunction against organization that prohibited its members from leafletting or distributing literature of any kind within an entire city). This case involves neither. Rather, this case involves individualized conditions of probation imposed as part of a sentence after a specific individual was convicted of a crime for his conduct against a victim. *See Starr*, 234 A.3d at 766 n.6 (appellant's "sole reliance on *Packingham* would not necessarily warrant him relief" because the statute at issue in that case "differs from Appellant's situation, insomuch as he is subject to probation supervision that is reviewed regularly"); *Commonwealth v. Sperber*, 177 A.3d 212, 220-221 (Pa. Super. 2017) (Bowes, J., concurring) (suggesting that *Packingham* may not apply to a condition of probation restricting individual internet access).

[7] The standard range of the Sentencing Guidelines recommended punishments from restorative sanctions up to and including nine months of incarceration. *See* N.T. Sentencing Hearing, 10/9/20, at 8-9.

10/9/20. This special condition is limited to the time period during which Appellant serves his criminal sentence. During that time, Appellant may continue to speak out about unfair grading systems, political bias, or any other topic on the internet or social media so long as he does not include information about the victim in this case – Dr. Bouchat. Moreover, it does not limit Appellant from speaking about Dr. Bouchat in any other **offline** forum. For example, the trial court's sentencing order does not preclude Appellant from engaging in expressive conduct regarding Dr. Bouchat through traditional pen-and-paper means, distributing literature, or public oration. Although the special condition directed Appellant "to the extent possible" to delete existing posts referencing Dr. Bouchat, the trial court did not prohibit Appellant from engaging in social media platforms or restrict his internet access as a whole. The sole restrictions imposed by the probation conditions here were (1) to refrain from posting about Dr. Bouchat on the internet for the duration of Appellant's probation and (2) to delete his existing posts referencing Dr. Bouchat to the extent Appellant is reasonably able to do so. *Id.* In short, the challenged order did not impose a limitless ban on expressive activity but, instead, simply barred online speech discussing Dr. Bouchat and directed the retracting (if possible) of existing posts.

Where a sentence, as here, is within the sentencing guidelines, we will only reverse the order where it is clearly unreasonable. ***Commonwealth v. Koren***, 646 A.2d 1205, 1208 (Pa. Super. 1994). We remain mindful that "a

person placed on probation does not enjoy the full panoply of constitutional rights otherwise enjoyed by those who have not run afoul of the law. A [probationary] order with conditions placed on it **will to some extent always restrict a person's freedom**." *Id.* at 1209 (emphasis added).

Similarly, we recognize that a person's free speech rights are not absolute. *Commonwealth v. Knox*, 190 A.3d 1146, 1153-1154 (Pa. 2018). Rather, restrictions on speech are upheld "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 902 (Pa. 2020). In the context of a challenge to conditions of probation under § 9763(b)(15), restrictions on free speech will be deemed to validly serve the rehabilitative needs of the defendant if the facts of the case establish a reasonable nexus between the restriction imposed and the charged offense. *Carr*, 2021 WL 3852320 at *8-*9; *Commonwealth v. Houtz*, 982 A.2d 537, 541 (Pa. Super. 2009); *see also Starr*, 234 A.3d at 763-764 (no abuse of discretion where trial court-imposed internet restriction as special condition of probation within an individualized assessment of what best served the aims of rehabilitation and deterrence). While our own research has failed to uncover a test which governs the permissive scope of restrictions on expression within the context of a probationary order, we are guided by the analytical framework of *United States v. O'Brien*, where a restriction is deemed valid if:

(1) it is within the constitutional power of the government;

(2) it furthers an important or substantial government interest;

(3) that governmental interest is unrelated to the suppression of free expression; and

(4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

***United States v. O'Brien***, 391 U.S. 367, 377 (1968); ***see S.B. v. S.S.***, 243 A.3d 90 (Pa. 2020), *cert. denied* - - S.Ct. - - , 2021 WL 4509036 (Oct. 4, 2021); ***Commonwealth v. Lambert***, 147 A.3d 1221, 1229 (Pa. Super. 2019).

Under the first factor of ***O'Brien***, a restriction must be within the constitutional power of the government to impose. ***Id.*** Clearly, it is within the power of a trial court judge to impose conditions of probation as part of a sentence. ***See*** 42 Pa.C.S.A. § 9721(a) (listing an order of probation as one of the available sentencing options); 42 Pa.C.S.A. § 9754(b) ("the court shall attach reasonable conditions . . . necessary to ensure or assist the defendant in leading a law-abiding life."). This authority extends to special conditions of probation that reasonably restrict free speech rights. ***E.g.***, ***Fenton***, 750 A.2d at 868. Therefore, in fashioning Appellant's sentence, the trial court was authorized to impose an order of probation containing conditions of probation that reasonably restrict Appellant's free speech rights.

Under the second and third factors of ***O'Brien***, the restriction must further an important governmental interest unrelated to the suppression of free expression. ***O'Brien***, ***supra***. Conditions of probation validly serve

- 23 -

multiple important governmental interests, none of which are related to suppression of free expression. *See* 42 Pa.C.S.A. § 9754 (ensure or assist defendant in leading a law-abiding life); *Carr*, 2021 WL 3852320 at *5 (protection of public, the offense's impact on the victim and community, and rehabilitative needs of the defendant); *Starr*, 234 A.3d at 763 (rehabilitation and deterrence of criminal activity); *Lambert*, 147 A.3d at 1229 (cessation of abuse); *Commonwealth v. Hartman*, 908 A.2d 316, 321 (Pa. Super. 2006) (protecting the public and preventing recidivism).

Here, the trial court fashioned a probationary sentence with concomitant conditions designed to serve the aforementioned governmental interests. Unlike *Houtz*, where the record revealed "the absence of any facts" connecting the restriction imposed to a governmental interest, *Houtz*, 982 A.2d at 541, the certified record in this case demonstrates a sufficient nexus that the restriction furthers the important governmental interests at stake. The evidence indicates that Appellant committed the crime for which he was sentenced with the intent of posting the video on the internet and social media for his own benefit and notoriety. *See* N.T. Sentencing Hearing, 10/9/20, at 9. The record demonstrates that the trial court thoroughly examined the facts of this case in order to make an individualized assessment of what conditions of probation would best serve the rehabilitative needs of Appellant and protection of the victim and society. *Id.* at 8-12. After highlighting Appellant's intent, immaturity, lack of remorse, and inability to take responsibility for the

considerable abuse his actions caused Dr. Bouchat, the trial court found that restricting Appellant's ability to post about Dr. Bouchat on the internet and requiring the deletion of previous posts referencing her would protect Dr. Bouchat, protect society, and aid Appellant in taking responsibility for his actions. *Id.* at 12. These interests are unrelated to the suppression of free expression. *O'Brien*.

The last factor of the *O'Brien* test analyzes whether the restriction is "narrowly-tailored to advance the important governmental interest at stake … while remaining silent as to other channels of communication available to [the a]ppellant." *Lambert*, 147 A.3d at 1229. Our Supreme Court recently upheld an order which, as here, prohibited the appellants from referencing a specific person. *See S.B. v. S.S.*, 243 A.3d 90 (Pa. 2020), *cert. denied* - - S.Ct. - -, 2021 WL 4509036 (Oct. 4, 2021). The "gag order" restricted a mother and her counsel from speaking publicly or communicating about her custody case in forums "including, but not limited to, print and broadcast media, on-line or web-based communications," or inviting, directing, or encouraging third parties to view or post the same. *Id.* at 97. Moreover, it directed the mother and counsel to remove any prior posts. *Id.* In upholding the gag order, our Supreme Court concluded:

> [W]hen read in context, the order affords [the a]ppellants ample opportunity to disseminate all of their thoughts into the marketplace of ideas without restriction on the content of their message. The gag order further allows [the a]ppellants to voice all of their opinions regarding issues important to them … and to testify about these issues before governmental bodies in an effort

> to remedy these vital societal concerns. **The only limitation on [the a]ppellants' speech lies in the manner of communication**, as they are precluded from conveying such public speech in a way that exposes Child's identity and subjects him to harm.

*Id.* at 107 (emphasis added). The Court noted that a restriction, while required to be narrowly-tailored, "need not be the least restrictive or least intrusive means of [achieving its permitted goal]." *Id.* at 105 n.12, *quoting* ***Ward v. Rock Against Racism***, 491 U.S. 781, 798 (1989). Consequently, the Court upheld the gag order's restrictions on free speech as narrowly tailored to further the important government interest of preventing harm to the target of the gag order's protection. *Id.* at 111.

Similarly, here, the conditions on Appellant's probation are valid. The restrictions do **not** constitute a blanket prohibition on Appellant's internet usage or expressive activity. Appellant is free to speak anywhere regarding topics important to him, as long as his online speech is not conveyed "in a way that exposes [Dr. Bouchat's] identity and subjects [her] to harm." ***See S.B., supra.*** Moreover, by its terms, Appellant is free to refer to Dr. Bouchat in public speech outside of the internet and social media platforms. ***See id.*** at 111 (valid order left open "ample alternatives for communication"); ***Lambert***, 147 A.3d at 1229 (valid order remained "silent as to other channels of communication available); ***Fenton***, 750 A.2d at 868 (valid order did not "bar appellant from expressing his views in an appropriate manner in the appropriate forum."). Contrary to Appellant's assertions, the conditions of

probation here were narrowly-tailored to serve his unique rehabilitative needs and to further the protections required under the facts of the present case. We discern no abuse of discretion in the imposition of Appellant's special conditions of probation. Therefore, Appellant's discretionary sentencing challenge is without merit.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2021